BEFORE THE FIRST DIVISION, FEBRUARY 7, 1950

No. 54008.—W. R. Zanes & Company v. United States, protests 115844–K, etc. (Galveston).

OLIVER, Chief Judge: The merchandise involved in the cases before us consists of certain stones invoiced as "synthetic garnets." The official papers indicate that in some of the involved protests the stones were classified at 60 percent ad valorem as "imitation precious stones," not faceted, and in others as "imitation semiprecious stones," not faceted, under paragraph 1528, Tariff Act of 1930. This provision of the tariff act provides, among others, for "imitation precious stones, cut or faceted, imitation semiprecious stones, faceted" and "imitation precious stones, not cut or faceted, imitation semiprecious stones, not faceted." The plaintiff by its protests claimed these imported stones to be properly dutiable at 10 percent ad valorem as semiprecious stones under the provisions of said paragraph 1528.

During the trial samples of stones, claimed to be identical with the imported merchandise, were received in evidence (plaintiff's collective exhibit 1). Plaintiff introduced testimony of three witnesses in support of its contention that the imported merchandise was semiprecious stones used in the manufacture of school class rings. One of plaintiff's witnesses gave it as his opinion that the stones before us are "obsidian." (R. 12.) Various other samples were introduced in evidence and the witness testified he had made a melting test on two of the stones in collective exhibit 2–B for identification and that such a test would usually establish whether a stone was glass or not, and if it was, the color would usually burn out. This witness testified that as to the samples he had tested the coloring "didn't completely burn out" but "left a coloring inside, which glass ordinarily wouldn't do." There was no further testimony by the plaintiff that the imported stones before us are obsidian or that obsidian is a semiprecious stone.

The defendant introduced the testimony of three witnesses ·of varying experience with imitation, precious, and semiprecious stones. Their testimony

established that when examined under a strong lens the samples in collective exhibit 1 showed air bubbles, indicating that they were glass and that such bubbles were never found in natural stones. It was the opinion of one of the witnesses that collective exhibit 1 is a "manufacturer's stone, that is, a colored glass stone" (R. 19). In his opinion, these stones are imitation semiprecious stones, imitating garnets, and are not cut or faceted. He further stated that in his opinion the stones before us definitely could not be obsidian. Defendant's second witness testified in like manner that the stones before us are glass imitation of garnets and therefore in his opinion are imitation semiprecious stones, not cut or faceted (R. 24). This witness also testified that in his opinion the imported stones were imitation semiprecious stones which had been molded and polished and had not been cut or faceted (R. 26). Upon cross-examination, he stated that these stones were glass and stated that "if it is possible to mold obsidian then it would be possible that those were glass" (R. 26) and there was a possibility that these stones could be obsidian (R. 27).

Plaintiff sought permission from the court to have an analysis made of these stones, and permission was granted to extract a sample for this purpose. Thereafter, there was filed with the court a copy of a letter from counsel for the plaintiff addressed to Wm. V. Schmidt Co., Inc., 30 Rockefeller Plaza, New York City, under date of March 23, 1948, forwarding this sample "for an analysis and for an opinion as to whether this stone is molded stone or whether this stone is from obsidian, a natural mined semi-precious stone." Counsel asked that the report pursuant to his request be made direct to the United States Customs Court at New York. Thereafter, under date of April 15, 1948, the said Wm. V. Schmidt Co., Inc., forwarded to the court an original letter from the Gem Trade Laboratory, Inc., giving an analysis of the stone submitted to them. The conclusion of their analysis is that the "Material is GLASS." As this report or analysis has not been introduced into evidence, we cannot consider it.

This cause having been adjourned at Houston, Tex., and continued to New York, the case was finally called at New York on November 1, 1948. No further testimony was introduced by the plaintiff and no further appearance was made by its counsel. A representative from the office of the Assistant Attorney General stated in open court that his office had communicated with the attorney for the plaintiff and had received no reply but that a local firm of customs attorneys, who had represented this particular importer in other cases, had informed a member of the Assistant Attorney General's staff that it had some information to the effect that the importer was not desirous of going ahead with the cases. Under the circumstances, the Government requested that these cases be submitted. The cases were, therefore, marked submitted.

Plaintiff in filing the protests herein has assumed the double burden of establishing, first, that the collector's classification is wrong and, in addition, must affirmatively establish its own claim as correct (United States v. H. V. Albrecht, 27 C. C. P. A. 112, C. A. D. 71). This, the plaintiff has failed to do. The classification of the collector is presumed to be correct and conforms with the invoice description of the merchandise as "synthetic garnets."

Plaintiff having failed to sustain its burden and not having overcome the presumption of correctness attaching to the collector's classification, the protests are overruled. Judgment will be entered accordingly.